UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 20-cv-20712-JLK

MIKEADA EFFS, an individual,

      Plaintiff,

vs.

CITY OF MIAMI, a Florida municipality, and ALEXI FIGUEROA, individually and as a former police officer of the City of Miami Police Department,

      Defendants.

_____/

## DEFENDANT CITY OF MIAMI'S MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF LAW

Defendant CITY OF MIAMI ("CITY"), by and through undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Florida statute section 768.28(9),  hereby moves to dismiss the first amended complaint [D.E. 5] with prejudice for failing to state plausible claims for relief.  The first amended complaint should be dismissed with prejudice because it fails to state claims for relief under 42 U.S.C. section 1983 or the Florida Civil Rights Act of 1992.  Plaintiff has failed to allege sufficient facts to establish a plausible claim for municipal liability under section 1983.   Instead, Plaintiff mistakenly relies on *respondeat superior* to establish her claim under section 1983.  Moreover, the City is entitled to sovereign immunity from Plaintiff's state law claims because she alleged the City's officer acted in bad faith, and willfully and wantonly deprived her of her rights.  Additionally, the alleged sexual assault cannot be construed to arise in the course and scope of the officer's employment with the City.  Sovereign immunity has not been waived for the alleged criminal conduct of

Defendant Figueroa in sexually assaulting the Plaintiff outside the course and scope of his employment.

## **BACKGROUND**

This case arises from Plaintiff's January 26, 2016 encounter with former City Police Officer Alexi Figueroa ("FIGUEROA").  [D.E. 5].  On the date in question, Plaintiff alleges she was walking in the area of N.W. 7th Avenue and 80th Street when she was approached by Figueroa in his police vehicle and he lowered his window and ordered her to get in the vehicle. [D.E. 5, ¶ 22].  Plaintiff alleges she complied with Figueroa's request and sat in the front passenger seat.  [D.E. 5, ¶ 23].  There are no allegations Plaintiff was physically restrained or forced into the car.  Plaintiff alleges Figueroa asked her if she wanted to be "friends with benefits."  [D.E. 5, ¶ 26].  Plaintiff further alleged Figueroa leaned towards her, kissed her on the lips without her consent, and stuck his hand on her right bare breast.  [D.E. 5, ¶ 29].  Plaintiff claims she pulled away from Figueroa and exited the police vehicle.  [D.E. 5, ¶ 30].  According to her amended complaint, Plaintiff left the scene, went home where a family member called 911 to report the incident.  [D.E. 5, ¶ 33].  The amended complaint alleges the City and the Miami-Dade State Attorney's Office investigated the incident and Figueroa was ultimately arrested and charged with false imprisonment and battery upon Plaintiff.  [D.E. 5, ¶ 37].  Plaintiff alleged the City terminated Figueroa as a police officer and his termination was upheld in a binding arbitration decision finding that the City terminated Figueroa upon just cause.  [D.E. 5, ¶¶ 38-39].  Plaintiff alleged Figueroa acted in bad faith and with willful and wanton disregard for Plaintiff's constitutional rights.  [D.E. 5, ¶ 48].  These allegations are repeated in paragraphs 59 {"Officer Figueroa acted in bad faith, malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property"} , and 64 {"Officer Figueroa acted in bad

faith, with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights safety or property."}  [D.E. 5, ¶¶ 59 and 64].

Plaintiff filed her first amended complaint alleging the following counts against the City: (1)  deprivation of rights under color of law arising under 42 U.S.C. section 1983; (2) vicarious liability alleging a violation of the "…statutory duty of car to Plaintiff as provided by the Florida Civil Rights Act of 1992, Section 760.01(2) of the Florida Statutes;" (3) deprivation of her Fourth and Fourteenth Amendment rights under 42 U.S.C. section 1983[1]; and (4) negligence [D.E. 5].   The remaining counts of the first amended complaint (V through IX) pertain to Figueroa.  [D.E. 5].

## MEMORANDUM OF LAW

### I.       Motion to dismiss standard

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. at 1949.  A plausible entitlement to relief exists "when the allegations in the complaint traverse the thresholds separating the 'conclusory' from the 'factual' and the 'factually neutral' from the 'factually suggestive.'"   Barton v. Florida, 2007 WL 1724943 (N.D. Fla. 2007) (citing Bell Atlantic Corp., 127 S.Ct. at 1958, n. 5).  Finally, if a complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6). Gregory v.

---

[1] Count III is duplicative of count I in that they both seek relief for Fourth Amendment violations pursuant to 42 U.S.C.  Moreover, in a shotgun pleading fashion, Plaintiff incorporated all of the allegations of count I into count III.  [D.E. 5, ¶ 55].

Miami-Dade County, 86 F.Supp.3d 1340, 1343 (S.D. Fla. 2015) (dismissing claims of battery and false imprisonment against County on affirmative defense of sovereign immunity).

**II.     The complaint does not establish a plausible claim for municipal liability under 42 U.S.C. section 1983.**

Section 1983 of Title 42 of the United States Code provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia subjects, or causes to the subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .42 U.S.C. § 1983.

In order to prevail on a claim for relief pursuant to Title 42 U.S.C. section 1983, a plaintiff "must show violation of a constitutionally protected liberty or property interest and deliberate indifference to constitutional rights" Rivas v. Freeman, 940 F.2d 1491, 1496 (11th Cir. 1991).  It is well settled that there is no *respondeat superior* liability under section 1983 making a municipality liable for the wrongful actions of its police officers.  Monell v. Department of Social Services, 98 S.Ct. 2018, 2038 (1978).  "To impose section 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Casado v. Miami-Dade County, 340 F.Supp.3d 1320, 1326 (S.D. Fla. 2018).  "A plaintiff seeking to recover pursuant to § 1983 from a municipality must demonstrate that the official policy or custom was the moving force of the constitutional violation." Whittington v. Town of Surfside, 490 F.Supp.2d 1239, 1258 (S.D. Fla. 2007).  The City submits the first amended complaint fails to include allegations that Plaintiff suffered a Fourth Amendment violation.  In addition, the complaint does not contain allegations showing that an official custom or policy of the City was the moving force of

the constitutional violation.  Accepting Plaintiff's allegations as true, Figueroa's alleged sexual assault on Plaintiff were only motivated by his own interests and not in furtherance of any municipal policy or custom.

### A.      Plaintiff does not allege facts supporting a Fourth Amendment violation.

The Fourth Amendment provides the "right of the people to be secure in their persons...against unreasonable searches and seizures." U.S. Const., amend. IV.  "A person has been "seized" within the meaning of the Fourth Amendment "only when, by means of physical force or a show of authority, [her] freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards," Doe v. City of Miami Gardens, 389 F.Supp.3d 1118, 1130 (S.D. Fla. 2019)(internal citations omitted).  "A show of authority, without the application of physical force, to which the subject does not yield is not a seizure."  Id.  "The officer's subjective intention is irrelevant."  Id.

The case of Doe v. City of Miami Gardens, 389 F.Supp.3d 1118, 1131 (S.D. Fla.. 2019), is instructive to show Plaintiff has not established a Fourth Amendment violation.  Under facts substantially similar to the instant case, Judge Ungaro found Doe had not established a Fourth Amendment violation.  In Doe, the Plaintiff brought a section 1983 claim for purported violations of her Fourth Amendment rights after a police officer allegedly grabbed her breasts against her will and asked her to have sex with him.  Id.  The defendant police officer had offered Doe a courtesy transport to her home, but instead of taking her home the officer drove her to a hotel where the alleged sexual assault took place.  Id.  Doe pushed the officer's hand away and told him not to touch her.  Id.  The officer then left the hotel room.  Id.  Doe sued the officer for purported violations of her Fourth Amendment rights which the Court interpreted to be her alleged detention in the police car, the hotel room, and the sexual assault.  Id. at 1126.  The officer moved for summary judgment on qualified immunity grounds and asserted that

Plaintiff failed to establish facts supporting a Fourth Amendment violation.[2] Judge Ungaro granted the defendant officer's motion for summary judgment on the section 1983 claim finding that neither the police transport not the hotel stay constituted a Fourth Amendment violation.  Id.  "Further, the alleged sexual assault—while deplorable if proven—does not violate the Fourth Amendment."  Doe v. City of Miami Gardens, 389 F.Supp.3d 1118, 1130 (S.D. Fla. 2019).  "As to Sgt. Romaguera's alleged unwanted groping and sexual propositioning, this does not amount to a seizure under the Fourth Amendment. 'Even unreasonable, unjustified, or outrageous conduct by an officer is not prohibited by the Fourth Amendment if it does not involve a seizure.'"  Id.  In light of the foregoing, the City submits Plaintiff has failed to allege sufficient facts sustaining a Fourth Amendment violation.  Plaintiff does not allege she was physically seized, and she was able to leave the police car after the alleged assault.

**B.      Plaintiff does not allege a custom or policy was the driving force was the cause of her alleged Fourth Amendment violations.**

To substantiate her federal claim against the City, Plaintiff alleged Figueroa acted under the apparent scope of his authority as a law enforcement agent when he sexually assaulted the Plaintiff.  [D.E. 5, ¶ 46].  The only references to any departmental custom or policy are found at paragraphs 45 and 47, which allege that when an officer determines a person is a danger to herself or others it requires the officer to transport the officer to a proper receiving mental health facility.  [D.E. 5, ¶ 45][3].  "Per departmental policy, in every case where in which a distressed person is taken into the police car, the operator shall promptly notify the radio dispatcher."  [D.E. 5, ¶ 47].  Plaintiff's reliance on this departmental policy is misplaced in support of her section 1983 claim.  First, there is no allegation that Figueroa actually followed this policy and notified the dispatcher when

---

[2] Notably, the City of Miami Gardens was dismissed from the case.  Id.

[3] It appears Plaintiff relies upon a departmental policy concerning involuntary mental health examinations commonly referred to as "Baker Act" cases. Section 394.463(2) of the Florida statutes provides that a law enforcement officer shall take a person who appears to meet the criteria for involuntary examination into custody and deliver the person or have him or her delivered to an appropriate, or the nearest, facility for examination.  Fla. Stat. §394.463 (2020).

Plaintiff entered his police car.  Secondly, it cannot be said that the policy, which simply mirrors state law for involuntary mental health assessments, was the driving force behind Plaintiff's alleged constitutional violations of her Fourth Amendment rights.  There is no factual nexus between the alleged policy and Plaintiff's sexual assault.  Plaintiff has done nothing more than plead *respondeat superior* liability against the City.  There are no specific allegations that a departmental policy providing for the transport of Baker Act patients was the driving force behind an isolated, alleged sexual assault.  The purported policy or custom cannot be construed as the moving force of Plaintiff's alleged constitutional violations.  Based on the well-established authority cited above, the complaint fails to state a claim for municipal liability under 42 U.S.C. section 1983 and should be dismissed with prejudice.

### III.    The complaint fails to state a claim arising under the Florida Civil Rights Act.

In count II, Plaintiff alleged the City owed a statutory duty of care to Plaintiff as provided by the Florida Civil Rights Act of 1992, §§ 760.01(2), and departmental policy.  [D.E. 5, ¶ 52].  A review of the statutory scheme reveals Plaintiff's reliance on this statute is misplaced.  Section 760.01 of the Florida Statutes states the following general purpose of the Florida Civil Rights Act of 1992:

> The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.  Fla. Stat. § 760.01.

The statute makes it unlawful to discriminate because of race, color, religion, gender, pregnancy, national origin, age, handicap, or marital status in the areas of education, employment, housing or public accommodations and provided for a cause of action for damages. Fla. Stat. § 760.07.  The statute goes on to discuss discrimination in places of public accommodation and unlawful employment practices.  Fla.

Stat. §§ 760.08 and 760.10. The statute is inapplicable to the facts alleged here. Plaintiff does not allege she suffered discrimination in the areas of education, employment, housing or public accommodations. Nor does Plaintiff alleged she suffered discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap or marital status. The first amended complaint is devoid of any factual allegations supporting a claim under the Florida Civil Rights Act and should be dismissed.

## IV.   Sovereign immunity bars Plaintiff's claim for *respondeat superior*.

Sovereign immunity bars Plaintiff from bringing tort claims against the City for the conduct of its employees which are outside the course and scope of employment or committed in bad faith and with malicious purpose. Here, the alleged conduct of Figueroa cannot be construed as arising in the course and scope of his employment when he kissed Plaintiff and fondled her breast against her will. Florida Statute section 768.28 governs the limited waiver of sovereign immunity in tort actions against Florida governmental agencies. Fla. Stat. § 768.28. Subsection 768.28(9) provides:

> "The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, <u>unless</u> such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9) (emphasis added).

<u>Casey v. City of Miami Beach</u>, 789 F.Supp.2d 1318, 1320–21 (S.D. Fla. 2011), is instructive on this point and nearly identical to the facts in the instant action. In <u>Casey</u>, Plaintiff attempted to sue the City of Miami Beach for vicarious liability for the conduct of one its police officers when it was alleged the officer arrested Casey then fondled her breasts, put his hands down her pants, put his tongue down her throat and rubbed her upper thighs with his hands. <u>Id</u>.

Based on those facts, Judge Martinez applied Florida's sovereign immunity statute and held the officer was not acting within the course and scope of his employment and dismissed the vicarious liability claims against the City of Miami Beach.  "Here, the sexual battery was not activated by any purpose to serve the City. Plaintiff's conclusory allegations with regard to Macias's actions being within his course and scope of employment do not change this fact. There is no construction of the facts alleged in this case that will support a cause of action against the City for vicarious liability for the sexual battery. Thus, the Court finds Macias was not acting within the course and scope of his employment when he sexually assaulted Plaintiff after driving her to a dark alley subsequent to her arrest."  Casey v. City of Miami Beach, 789 F.Supp.2d 1318, 1320–21 (S.D. Fla. 2011).

In addition, Plaintiff's state law claims are barred because she has alleged Figueroa acted in bad faith and maliciously.  "Florida courts have routinely held that a governmental entity may not be held liable where its employee's actions were malicious, in bad faith, or showed reckless and wanton disregard for human rights, safety, or property."  Fletcher v. City of Miami, 567 F.Supp.2d 1389, 1394 (S.D. Fla. 2008)(internal citations omitted).  Based on the foregoing, Plaintiff's state law claims for negligence and vicarious liability should be dismissed with prejudice under Florida's sovereign immunity statute.

WHEREFORE, the City of Miami requests the Court dismiss the first amended complaint with prejudice.

VICTORIA MÉNDEZ, City Attorney
CHRISTOPHER A. GREEN,
Senior Assistant City Attorney
Attorneys for **Defendant**
444 S.W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Fax: (305) 416-1801
Email:  cagreen@miamigov.com
Secondary Email:  kjones@miamigov.com

By: */s/ Christopher A. Green*

      Christopher A. Green,
      Senior Assistant City Attorney
      Florida Bar No. 957917

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on May 12, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>*s/ Christopher Green*</u>
Christopher A. Green
Assistant City Attorney
Florida Bar No. 957917

Georgia Robinson, Esq.,
3500 N. State Road 7, Suite 437,
Fort Lauderdale, Florida,  33319
robinsonlawmediation@gmail.com.